IN THE MATTER OF THE ULSTER COUNTY SAVINGS BANK TO HAVE THE ASSESSMENT ROLL OF THE CITY OF KINGSTON CORRECTED.

*Application to the county court to have errors in an assessment roll corrected — may be made when the assessors have no jurisdiction over the property assessed — chap. 855 of 1869 and chap. 695 of 1871.*

Chapter 855 of 1869, as amended by chapter 695 of 1871, empowers the boards of supervisors, on the recommendation of the county court of any county, "to correct any manifest clerical or other error in any assessment," and to refund any tax illegally or improperly assessed or levied.

*Held*, that the said acts authorized an application to the county court to have an assessment stricken from the roll, where there was an entire want of jurisdiction in the assessors to assess the property in question, *e. g.*, the surplus profits of a savings bank wholly invested in United States bonds. (LEARNED, P. J., dissenting.)

APPEAL from an order of the County Court of Ulster county, denying the application of the Ulster County Savings Institution for an order recommending the common council of the city of Kingston (in this case occupying the position of the board of supervisors) to correct the assessment roll of the said city for the year 1879, to the extent of striking from the said roll an assessment of $30,000 against the personal property or surplus of the said the Ulster County Savings Institution, which said $30,000 was alleged in the petition of the treasurer of the said savings institution to have been wholly invested in United States government bonds before, and to have been so invested at the time of, the assessment thereof. The application was made under chapter 855 of 1869, as amended by chapter 695 of 1871.

*A. W. Cooper*, for the Ulster County Savings Institution, appellant.

*Charles M. Preston*, for the city of Kingston, respondent.

BOCKES, J. :

The denial of the appellant's application by the county court was put, as stated in the order appealed from, on the ground of a want of jurisdiction in that court to grant the prayer of the petitioner. It was not based upon any denial of the allegations of the petition ; hence, on this appeal, we must accept those averments as true.

It is stated in the petition that the "surplus deposits" of the institution were *all* invested in United States government bonds ; that such bonds were exempt from taxation ; that said institution had no "*other personal property liable to taxation ;*" and further that the assessors had illegally assessed the institution upon the assessment roll for $30,000 "surplus deposits." It was also averred that the assessors had, on due application to them, refused to strike off such illegal assessment, and had returned the roll to the common council.

These averments stand admitted, and they show that the assessment upon the institution for $30,000 United States government bonds, "surplus deposits," was illegal, not merely erroneous, but illegal, because wholly unauthorized by law.

The decision of the county court was made, doubtless, on the authority of the opinion of Judge ALLEN, *In re Hermance* (71 N. Y., 481), and, indeed, it is justified by that opinion. But the remarks of Judge ALLEN in that case, on which remarks the county court based its decision in this case, have been recently reviewed in the same court (*In re New York Catholic Protectory*),* where they are pronounced both *obiter* and unsound. It is there said that the *Hermance Case* "was not the case of a tax illegally imposed ; " that the decision, both in the Supreme Court and in the Court of Appeals "was made to turn upon the distinction between an *illegal* and an *erroneous* assessment," and as that was a case of mere erroneous assessment, Judge RAPALLO says, "the correctness of this decision can not be disputed." Judge

---

* MSS. op. Ct. of App., May 20, 1879.

RAPALLO then comments on the *obiter* remarks of Judge ALLEN in the *Hermance Case* as follows: " The learned judge who delivered the opinion did not, however, confine himself to the point * * * but discussed some questions which were not necessary to the determination of the case, and he was of opinion that the order could only be made. by the county court in cases where the error appeared upon the face of the proceedings, and was of an inferior character, in the nature of a clerical error, and that where the illegality consisted of a want of jurisdiction in the assessors the statute did not apply." These views of Judge ALLEN were pronounced heresies; were held to be unsound. I can do no better than here repeat the language of Judge RAPALLO. He says the power conferred by the statute " is not in its nature applicable to cases of mere clerical errors, or errors which would not render the assessment void. It seems to us intended to meet cases of illegal taxation; and those are, where a tax has been assessed, or levied without authority of law, or in violation of law. It furnishes a summary remedy for such cases. * * * This point was not involved in the *Hermance Case*, as that was not the case of an illegal tax, and the decision is not, therefore, conclusive as an authority. * * * We think that where, as in the present case, the tax is clearly illegal, being imposed in violation of the statute, the county court has power to order the board of supervisors to refund the amount collected therefor." This decision exactly covers the case in hand. That was a case where the statute exempted the property assessed from taxation. So here, the " surplus deposits" of the institution being in United States government bonds were likewise exempt from taxation.

It is urged by the respondent's counsel that the assessors had the right to determine the fact whether the " surplus deposits" of the institution were, or were not, invested in United States government bonds, and that they might determine that they were not so invested. This suggestion has two answers: (1.) That it stands admitted here, as averred in the petition, that *all* the " surplus deposits" were invested in United States government bonds, and that the institution had no other personal property liable to assessment; and (2) that even if the assessment should be deemed

to have determined this asserted fact against the institution, such determination by the assessors would not be conclusive, the fact being one upon which their jurisdiction depended. (*The Nat. Bank of Chemung* v. *City of Elmira*, 53 N. Y., 49.) In this case it was decided that officers could not acquire jurisdiction by determining that they have it. This precise point was also decided in *The New York Catholic Protectory Case*. (See first part of Judge RAPALLO's opinion.) The learned judge there says : " If the jurisdictional fact did not exist the determination of the assessors could not establish jurisdiction in them." *The New York Catholic Protectory Case* was precisely like this in its controlling fact. The land there assessed was declared by law to be exempt, as the United States government bonds here are declared exempt from taxation. So we must hold in this case, as it was held in *The New York Catholic Protectory Case*, that " the imposition of the tax in question was manifestly illegal, the property upon which it was assessed being by law exempt from taxation. It was not a case merely of an error of judgment in determining the amount of the tax, but of a total want of jurisdiction in the assessors to assess the property at all." Here the distinction, on which the decision turns, is marked. The distinction is between an erroneous and an illegal assessment. In the former the officers, having power to act, err in its exercise. In the latter they have no power to act at all, and, as was said in one of the cases cited, it does not aid the case for them to decide that they have it. So we must accept the decision in *The New York Catholic Protectory Case* as conclusive upon us here. It decides squarely that, where there is a want of jurisdiction in the assessors to assess the property they assume to assess, the assessment is illegal, and the acts of 1869 and 1871, under which this proceeding was taken, apply. In that case the assessors had the general authority to assess the applicant's land, but this piece assessed by them was by law exempt from taxation. So, in the case in hand, the assessors had the general authority to assess the applicant's " surplus deposits." But such surplus deposits were *all* invested in United States government bonds, and so, like the land in the other case, they were exempt from taxation, and the party had no other personal property liable to taxation. Thus it is seen that this is not a case of over valuation,

not a case of mere erroneous taxation; but is a case of illegal taxation, because of the want of jurisdiction in the assessors to lay the tax. This case, and that of *The New York Catholic Protectory*, stand alike in this regard.

· It was not necessary to apply to the assessors or to the common council, who here held the position of the board of supervisors, under the Laws of 1869 and 1871, to correct the roll before making the application to the county court. It seems, however, that the appellant did so apply to the assessors, who refused to make the correction. There is nothing in the statute requiring such action as a prerequisite to the right conferred. It was enough that the assessors were without jurisdiction in the premises, and consequently that the assessment was illegal. This being so, the case came within the purview of the law.

The order should be reversed, and the case must go back to the County Court of Ulster county for determination by that court.

And in case the facts stated in the petition should not be controverted, or, if controverted, should be proved to exist, that court should grant the order authorized by law to be granted. It may be proper here to say that, in case it should appear that the illegal tax has been collected, then it will lie with the county court to order the tax so improperly collected to be refunded under the law as amended in 1871. The order to show cause, which here took the place of a notice of motion, is broad in its terms, asking for specific relief, or for such other or further order as might be just.

No costs should be given on this appeal, inasmuch as the county court was led into the making of an erroneous order by what was · supposed to be the law as laid down by the Court of Appeals.

Order appealed from reversed, and proceedings sent back to the County Court of Ulster county to be acted upon and determined by that court, without costs of appeal to either party.

BOARDMAN, J., concurred.

LEARNED, P. J. (dissenting).

The case *In re Catholic Protectory* is the latest decision of the Court of Appeals on the statutes in question.

That case says that "the act undoubtedly *confines* the power of *correction* conferred upon the board of supervisors to clerical or other errors of that description.    This power is to be exercised before collection of the tax, and may be, even before its imposition.    But the power of the county court to order the *refunding* of a tax illegally assessed or levied and collected is a differ-·ent power, conferred, not upon the supervisors, but the court, and is not in its nature applicable to cases of mere clerical errors, or errors which would not render the assessment void.    It seems to us intended to meet cases of illegal taxation ; and those are where a tax has been assessed or levied without authority of law or in violation of law, *and has been collected.*"

The present application was not made to compel the supervisors to refund a tax which had been collected.    The tax had not been even levied when the application was made.    It was, therefore, an application to correct an assessment ; and under the decision above cited, such an application could only be granted in cases of " clerical or other error of that description."    Until that decision shall be reversed or qualified we ought to follow it, and the order should be affirmed, with ten dollars costs and printing disbursements.

Order reversed, with ten dollars costs and printing disbursements.